**UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
JUDGE JOHN L. KANE**


Civil Action No. **11-cv-03195-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**BRIAN ABEYTA,**
Defendant.
-------------------------------------------------------------------------------------------------------------
Civil Action No. **11-cv-3196-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**ERIN ADDESSO,**
Defendant.
-------------------------------------------------------------------------------------------------------------
Civil Action No. **11-cv-3197-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**OSKAR BERCEDONI,**
Defendant.
-------------------------------------------------------------------------------------------------------------
Civil Action No. **11-cv-03199-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**ERIN BUTLER,**
Defendant.

---

Civil Action No. **11-cv-3200-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**ERIC CONRY,**
Defendant.
------------------------------------------------------------------------------------------------------------

Civil Action No. **11-cv-3201-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**TRAVIS ESTEY,**
Defendant.
------------------------------------------------------------------------------------------------------------

Civil Action No. **11-cv-3202-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**IAN LENTZ,**
Defendant.
------------------------------------------------------------------------------------------------------------

Civil Action No. **11-cv-3203-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**DAN LINDSTROM,**
Defendant.
------------------------------------------------------------------------------------------------------------

Civil Action No. **11-cv-3204-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**CHRISTIE MASONE,**
Defendant.
------------------------------------------------------------------------------------------------------------

Civil Action No. **11-cv-3205-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**JASON McDONALD,**
Defendant.

---

Civil Action No. **11-cv-3206-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**DUSTIN MOBLEY,**
Defendant.

---

Civil Action No. **11-cv-3207-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**JOHN PERRY,**
Defendant.

---

Civil Action No. **11-cv-3208-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**EMMANUEL MARCHICA,**
Defendant.

---

Civil Action No. **11-cv-3209-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**MEGAN RODRIQUEZ-HOEPER,**
Defendant.

---

Civil Action No. **11-cv-3218-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**MARK SCHMUKAL,**
Defendant.
-------------------------------------------------------------------------------------------------------

Civil Action No. **11-cv-3219-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**SARAH SHANAHAN,**
Defendant.
-------------------------------------------------------------------------------------------------------

Civil Action No. **11-cv-3221-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**SHANNON SIDWELL,**
Defendant.
-------------------------------------------------------------------------------------------------------

Civil Action No. **11-cv-3226-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**LANCE SMITH,**
Defendant.
-------------------------------------------------------------------------------------------------------

Civil Action No. **11-cv-3227-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**MARYBETH VAN HORN,**
Defendant.
-------------------------------------------------------------------------------------------------------

Civil Action No. **11-cv-3229-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR
FITNESS,**
Plaintiff,
v.
**BRADFORD WILSON,**
Defendant.
-------------------------------------------------------------------------------------------------------------

Civil Action No. **11-cv-3230-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR
FITNESS,**
Plaintiff,
v.
**JENNIFER YENTES,**
Defendant.
-------------------------------------------------------------------------------------------------------------

Civil Action No. **11-cv-3284-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR
FITNESS,**
Plaintiff,
v.
**JOHN KOBBEMAN,**
Defendant.
-------------------------------------------------------------------------------------------------------------

Civil Action No. **11-cv-3285-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR
FITNESS,**
Plaintiff,
v.
**ROBERT SUREN,**
Defendant.
-------------------------------------------------------------------------------------------------------------

Civil Action No. **11-cv-3374-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR
FITNESS,**
Plaintiff,
v.
**JACQUELINE BLAZIER,**
Defendant.
-------------------------------------------------------------------------------------------------------------

Civil Action No. **11-cv-3375-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**MICHAEL STONEHOUSE,**
Defendant.

---

Civil Action No. **12-cv-114-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**MATTHEW POPELKA,**
Defendant.

---

Civil Action No. **12-cv-115-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**NICHOLE RAE,**
Defendant.

---

Civil Action No. **12-cv-122-JLK**
**24 HOUR FITNESS, USA, INC., a California corporation d/b/a 24 HOUR FITNESS,**
Plaintiff,
v.
**KRISTA HARMAN,**
Defendant.

---

**NOTICE OF MOTION AND MOTION FOR AN ORDER AWARDING
ENTITLEMENT TO REASONABLE ATTORNEYS FEES AS SANCTIONS
AGAINST OPPOSING COUNSEL PURSUANT TO 28 USC § 1927 FOR
MULTIPLYING PROCEEDINGS UNREASONABLY AND
VEXATIOUSLY**

[TOM, THIS COMPLIES WITH JUDGE KANE'S REQUIREMENTS] Summary of Relief Requested.  To all parties and their attorneys of record, please take notice that Defendants and their counsel in the above-entitled cases, will, and hereby do, move for an order entitling them to recover their reasonable attorneys' fees and costs against Plaintiffs' counsel of record, Joshua B. Kirkpatrick, and the law firm of Littler Mendelson, PC, under 28 U.S.C. §1927, on the basis that they unreasonably and vexatiously created a multiplicity of actions, which resulted in moving parties incurring substantial attorneys' fees and expenses in their successful defense of those cases.  Should they receive such an Order, moving parties will then meet and confer with opposing counsel to see if they can arrive at any agreements regarding fees and costs, and then move separately for a determination of the amount of fees and costs to be awarded.  See *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1205-1208 (10th Cir. 2008) (reciting the District Court's two-step approach for fees as sanctions under 1927).

DATED this 27th day of August, 2012.

Respectfully submitted,

DONAHOO & ASSOCIATES

By:/s/ Richard E. Donahoo
Richard E. Donahoo
440 West First Street, Suite 101,
Tustin, CA 92780
Tel: (714) 953-1010
Fax: (714) 953-7777
Email:  rdonahoo@donahoo.com

FOLEY BEZEK BEHLE & CURTIS, LLP

By: /s/  Justin P. Karczag
Justin P. Karczag
Thomas G. Foley, Jr.
575 Anton Blvd., Suite 710
Costa Mesa, California 92626
Telephone: (714)556-1700
Facsimile: (714) 546-5005
E-mail: Jkarczag@foleybezek.com

1.      **Introduction and summary of facts.**

Defendants in the above-entitled cases ("Defendants") and their counsel move for an order entitling them to recover their reasonable attorneys' fees and costs under 28 U.S.C. § 1927 because Plaintiffs' counsel has vexatiously and unreasonably created and/or maintained a multiplicity of actions, causing the undersigned counsel to expend valuable time and resources, and incur costs in the defense of those actions.  Specifically, Petitioners were part of a putative collective action case, having its roots going back to 2003 (*"Allen"*) and its most recent heading, *Beauperthuy et al v. 24 Hour Fitness et al*, CAND 06-0715 SC, ("*Beauperthuy*") that was decertified in February 2011.  Defendants, along with approximately 1000 other individuals, affirmatively opted- in to *Beauperthuy* and became parties thereto prior to the decertification.  Critically, that decertification order was based in part, on 24 Hour's representation in its briefing to the Court that efficiency would be promoted because it would not resist Defendants' attempt to arbitrate their claims.[1] Karczag Decl., ¶ 10(m), Doc 428, at 41.[2]

In March 2011, following the decertification of the *Beauperthy* collective action, Defendants filed with an arbitration service in San Francisco (JAMS), and served on 24 Hour, 983 individual Demands for Arbitration.  Karczag Decl., ¶ 10(n).  24 Hour responded by refusing to arbitrate *any* arbitrations pursuant to those Demands, yet again, contesting the venue that Claimants sought to resolve their claims.  Karczag Decl., ¶ 10(n).  In April 2011, Claimants filed a motion to

---

[1] The actual text of the representation was to the effect that "because Claimants are subject to individual arbitration agreements, they need not file individual lawsuits in order to arbitrate their claims."  The reference to "need not file individual lawsuits" is a representation that 24 Hour will not resist their attempts to arbitrate.  This is critical because 24 Hour had a long history of gamesmanship when it came to arbitration, as found by Judge Conti, which resulted in a finding that 24 Hour had waived its right to make any argument based upon the arbitration agreement.

[2] The reference to the "Karczag Decl." is a reference to the declarations filed in support of Defendants' Response/Opposition to Plaintiffs' Petitions to Compel Arbitration.  The term "Doc", unmodified, refers to the *Beauperthuy* Docket.

compel arbitration as to all Claimants, which was subsequently narrowed to a subset of 16 named Plaintiffs.  Karczag Decl., ¶ 10(p), Docs 446-448, ¶ 10(q).

In November 2011 (after months of unsuccessful meet and confer efforts), 24 Hour opposed the Motion to Compel Arbitration on the grounds that: (1) there was no refusal to arbitrate and thus Plaintiffs lacked standing to seek an order compelling arbitration; (2) Plaintiffs' arbitration demands were not timely nor compliant with Judge Conti's decertification Order and thus because of their "breach" of the arbitration agreement, could not enforce the agreement against 24 Hour; and (3) that because Plaintiffs had demanded arbitration, they had "effectively withdrawn" from *Beauperthuy*. In other words, Plaintiffs could not require arbitration, nor could they pursue their claims in   court.  Karczag Decl., ¶ 10(r), Doc 452.

On December 2, 2011, Judge Conti granted the motion to compel, holding, *inter alia,* (1) that 24 Hour had refused to arbitrate and therefore  16 arbitrations under  24 Hour's   2001 arbitration provision, which does not include a venue clause, would go forward in the Northern District of California, (2) Plaintiffs had not withdrawn from *Beauperthuy*, and (3) that the Demands filed by all Claimants to 24 Hour on March 21-24, 2011demonstrated substantial and timely compliance with the Decertification Order, Karczag Decl., ¶ 10(s), Exh. H, Doc 457:12.

On December 5, 2011, the instant Defendants and other Claimants, who have similar factual circumstances as the named Plaintiffs who prevailed in the motion to compel, filed the 273 individual Petitions to Compel Arbitration against 24 Hour in the Northern District of California and subsequently served 24 Hour's agent for service of process.  Karczag Decl., ¶ 10(t).

On December 6, 2011, 24 Hour's counsel Littler Mendelson learned of the filing of  the 273 Petitions to Compel Arbitration and responded, not by addressing the merits of those Petitions, but instead by commencing a self-declared "war" on

Defendants and other Claimants, and from that date, December 6, 2011, through February 2012, 24 Hour's counsel filed 307 Petitions to Compel Arbitration against Claimants in 21 different District Courts across the country, which cases were then assigned to dozens of Federal Judges, including the approximately 40 filed here, in Colorado.  Karczag Decl., ¶ 5, Exh. A (24 Hour's California counsel, Attorney Kloosterman's, email stating, "You guys wanted a war – so be it."); *24 Hour Fitness USA v. Gossett*, AZD, 11-cv-02421-ROS, Doc. 15, 4:23-25 (admitting that 24 Hour found out about the CAND Petition filings at least as early as December 6); Karczag Decl., ¶ 10(u) (re the out of state case filings); Declaration of Justin P. Karczag in Support of Motion for Sanctions filed concurrently herewith ("Karczag Sanctions Decl.") Exh 1 (list of nonCAND cases)

Claimants first learned of 24 Hour's filings on December 9, 2011.  In response, on December 10, 2011, Claimants requested 24 Hour to cease filing duplicative Petitions in District Courts throughout the country that would create unnecessary work and provided a list of all 273 Claimants who had filed Petitions in CAND.  Karczag Sanctions Decl. ¶ 2, Exh. 2 (Donahoo letter).   24 Hour refused to cease filing or prosecuting its already-filed Petitions.  *Id.*  In response, on December 20, 2011, Defendants and other Claimants moved for a preliminary injunction enjoining 24 Hour from prosecuting and further filing any Petitions against the Claimants, including Defendants herein on the basis of the first-filed-case doctrine, and equitable principles.  In response, 24 Hour filed an omnibus motion to transfer the 273 CAND Petitions to twenty-one separate District Courts across the country and an opposition to the Preliminary Injunction and the merits of the 273 CAND Petitions.

On January 9, 2012, Judge Conti held a hearing on Claimants' motions, and stated his intent to appoint a Special Master to make recommendations on all pending matters pertaining to the disputes between the parties, including where and if the arbitrations will proceed (e.g., in CAND or elsewhere).  At that Hearing 24

Hour *agreed* to the appointment of the Special Master to make a recommendation on, inter alia, Claimants' motion for an injunction and 24 Hour's motion to transfer the 273 cases, and all related issues. *Id.* at 4.

Indeed, one District Court, the District of Kansas, in response to a filing by 24 Hour, reviewed the *Beauperthuy* Docket, and found that 24 Hour <u>agreed</u> that the nonCAND petitions were part of an "ongoing litigation" and that 24 Hour <u>advocated</u> Judge Conti to appoint a Special Master to resolve the issues in those nonCAND cases, stating:

> In a brief in *Beauperthuy*, 24 Hour advocated the appointment of a Special Master who: "would assist the Court and the parties to effectively and expeditiously move these claims into arbitration, and to resolve some of the procedural issues that the parties have argued about for the past twelve months." (N.D. Cal. No. 06-0715, Dk. 489, p. 2). On February 27, 2012, the federal court entered an order appointing special master over "all cases currently pending or subsequently made part of these proceedings" in *Beauperthuy v. 24 Hour* Case 2:12-cv-02038-SAC-KGS Document 16 Filed 03/13/12 Page 6 of 8 *Fitness*, No. 06-0715. (N.D. Cal. No. 06-0715, Dk. 502, p. 1). Listed within the scopes of the Special Master's duties are to assist the court in:
>
>> determining whether a particular person is covered by an arbitration agreement;
>>
>> if so, determining which arbitration agreement applies;
>>
>> determining whether the terms of the arbitration agreement are enforceable;
>>
>> determining where and before whom arbitration shall occur, if at all;
>>
>> determining the order in which cases shall be arbitrated;
>>
>> resolving motions now pending before this Court, as well as future motions; . . . . *Id.* at p. 3.

The court is eager to hear the parties' suggestions on how this action should proceed in light of it being "part of ongoing litigation" in the

United States District for the Northern District of California, as so characterized by 24 Hour, and also apparently involving the same issues, the same agreements and the same parties. The instant action clearly turns on the interpretation and enforcement of the relevant arbitration agreements.

These are the same matters squarely identified for decision in the California litigation where many claimants under the same agreements are seeking a similar determination.  Karczag Decl., Exh Z, pg. 6-7.

Noteworthy is the fact that the earliest of these Colorado cases was filed on December 8, 2011.  But, 24 Hour's counsel continued to file cases in this District and others, including three here, that they filed as late as January 17 and 18, 2012—over a week after they advocated for the appointment of the Special Master (and all three of which required Defendants to file a substantive response and all three of whom were part of the 273 CAND Petitions).  24 Hour v. Popelka  1:12-cv-00114-JLK (01/17/12); 24 Hour v. Rae 1:12-cv-00115-JLK (01/17/12); and 24 Hour v. Harman 1:12-cv-00122-JLK (01/18/12); Karczag Decl., Exh. 3..

Whether it was the initiation of the non CAND cases or the perpetuation of 24 Hour's efforts to prosecute those competing petitions to compel arbitration in twenty-one separate District Courts after an agreed-to appointment of a Special Master in CAND to make a recommendation to Judge Conti on how to resolve  the venue issues, there was no valid legitimate purpose to the filing and/or maintenance of these actions in the District of Colorado.

Judge Conti confirmed as much in his July 5, 2012 order, in which he confirmed in the context of the merits of the CAND vs nonCAND Petitions, that it was 24 Hour and not the Claimants who had engaged in forum shopping, and that 24 Hour has consistently utilized its "considerable ingenuity to dilate and stall the proceedings":

Plaintiffs have consistently sought relief before this Court, even following decertification.  Meanwhile, 24 Hour – who has no counter-claims and seeks no relief in this action – has consistently exercised

13

its considerable ingenuity to dilate and stall the proceedings.  It strains credulity to say that Plaintiffs have engaged in forum shopping by seeking resolution of their claims in a single forum of a half-dozen years. Doc 528, p 23-24.

And earlier in his opinion, Judge Conti also noted that 24 Hour's nonCAND Petitions were incompatible with 24 Hour's stated position, and reaffirmed his prior finding of 24 Hour's "confusing, contradictory, and time-consuming strategic maneuvering" over the arbitration agreement:

> 24 Hour's out-of-district Petitions all purport to deny the arbitrability of Plaintiffs' claims. This is inconsistent, of course, with 24 Hour's assertion of a right to arbitrate those claims.  This is not the first time 24 Hour has acted in a manner incompatible with its stated position. As early as November 2006, the Court found that 24 Hour was engaging in "confusing, contradictory, and time-consuming strategic maneuvering purportedly based on the [2001] Arbitration Agreement but which involve[d] simultaneous explicit refusals to compel arbitration."  ECF No. 66 at 10.  As set forth more fully in Section III.B.3.a, the Court regards 24 Hour's denials as more of the same tactics.  *Id.* at p. 13-14 fn 12.

Judge Conti's opinion in this regard is not one of an isolated or biased view. Indeed, of *all* of the 307 Petitions filed by 24 Hour across the country at issue, when District Courts had a chance to review the merits of the Petitions, *every single* District Court , with one exception, has found 24 Hour's Petitions to be what Respondent contends them to be: shams designed to distract and delay.  Or, to track the language used by the Courts, to have been filed unnecessarily, without any jurisdictional basis, or based upon questionable factual and legal representations.

In sum, every single case to truly reach the merits, except one, has either been dismissed, ordered to show cause re dismissal, ordered to show cause re dismissal and Rule 11 sanctions, stayed and closed, or simply stayed, pending the determination of Judge Conti based on the Recommendation of the Special Master,

Hon. Judge Larson (Ret.) of CAND, whom 24 Hour agreed would determine these issues. Some examples are below.[3]

Chief Judge Silver of the District of Arizona ruled in the two of the fifteen pending cases in the District of Arizona that were assigned to her "there *is no set of circumstances* where the present petition to compel arbitration is necessary….therefore, sound judicial administration requires this case be dismissed." *24 Hour Fitness USA, Inc. v. Lisa Gasteiger*, No. CV-11-2420-PHX-ROS [Doc. 16] and *24 Hour Fitness USA, Inc. v. Tyler Gossett*, No. CV-11-2421-PHX-ROS [Doc. 16] (emphasis in original). Karczag Decl., Exh. FF.

Judge Martone of the District of Arizona, dismissed the four cases assigned to him, finding specifically that:

> Petitioner's argument rests solely on its contention that "[i]t would be absurd" to arbitrate anywhere but Arizona. But petitioner fails to identify a case or statute which compels arbitration in this District, despite the lack of a forum selection clause in the agreement. Nothing in the contract provides that arbitration must occur in Arizona or in the place of respondent's employment.

> Respondent has not refused to arbitrate within the meaning of § 4 of the FAA. The Northern District of California has been the center of all the litigation arising out of this dispute. It is also the place of petitioner's headquarters. Any action to confirm an arbitration award should be heard in the Northern District of California. It makes sense to arbitrate there. *Conlogue* Order 2:10-21. See *24 Hour Fitness USA, Inc. v. Conlogue*, USDCDAZ 11-02416-PHX-FJM [Doc. 18],

---

[3] A partial list of representative early rulings was provided in the Responses/Oppositions to the Petitions. Additional opinions were provided in the Reply re Sanctions filed in the other nine District of Colorado cases. In addition, there have been subsequent dismissals. This list is merely a selection of representative opinions issued that, for the most part, were not included in the Response/Oppositions. It commences, for context, with the most recent decision cited in the Response/Opposition, from Judge Silver of the District of Arizona, and then includes new decisions. These decisions are consistent with, and in many ways, more detailed than, than those earlier decisions. Note, many other Courts have simply dismissed the cases without analysis, like the District of Hawaii. Other Courts have provided analysis that is comparable to the ones in the referenced opinions below. Finally, Judge Lynn's OSC re Sanctions from TXND is presented again because it is highly relevant to the instant motion.

*24 Hour Fitness USA, Inc. v. Di Giuro*, USDCDAZ 11-02418-PHX-FJM [Doc. 26], *24 Hour Fitness USA, Inc. v. Yong*, USDCDAZ 11-02426-PHX-FJM [Doc. 20], and *24 Hour Fitness USA, Inc. v. Decker,* USDCDAZ 11-02417-PHX-FJM [Doc. 26], Karczag Sanctions Decl., Exh. 4.

Judge Lynn, in the Northern District of Texas, in looking at an identical set of 30 Petitions that 24 Hour filed there, has issued an OSC re Sanctions and dismissal of all of 24 Hour's petitions, finding specifically that "the Court questions whether the representations made in the papers submitted by the Plaintiff are legally or factually justified." All 30 NDTX OSCs, commencing alphabetically with *24 Hour Fitness v. Alley*, USDCSDTX #3:12-cv-00043-M (Doc 10), are attached collectively to the Karczag Decl., as Exhibit AA.[4]

And, Middle District of Florida Judge Dalton, who had previously stayed the two cases assigned to him pending the outcome of the Special Master's recommendation in NDCA one month before, issued a subsequent order dismissing the cases anyway, finding that the 2001 arbitration policy did not give 24 Hour the right to compel arbitration in Florida. See May 17, 2012 Order, page 2, issued in *24 Hour v. Shafer*, Case No. 3:11-cv-1212-J-37-JBT [Doc. 18], attached as Exhibit 5 to the Karczag Sanctions Dec.. Moreover, the Court declined to continue staying the cases, finding that it would be a "waste" of "valuable judicial resources monitoring these files. Rather than requiring the federal judiciary to maintain two cases open and pending directed at the same dispute and involving the same parties, something which does not "secure the just, speedy, and inexpensive determination of these disputes, FRCP 1" *Id.*, p.2, fn 3.

Judge Wright from the Western District of Missouri also issued an OSC re dismissal of the case assigned to him. See Order issued in *24 Hour Fitness v. Latimer* Case No. 11—1261-CV-W-SOW, Karczag Sanctions Decl., Exh 6.

---

[4] Judge Lynn has subsequently dismissed the cases but has not yet ruled on the OSC re sanctions.

In one of the most poignantly worded opinions, Judge Sparks, of the Western District of Texas, transferred the four cases assigned to him back to the Northern District of California, agreeing with every argument made by the employees, and while doing so, made the following observations:

- "24 Hour's counsel apparently took offense when the Employees filed 273 individual petitions to compel arbitration in the Northern District of California, declaring in an email to Employees' counsel, "You guys wanted a war – so be it."  But 24 Hour's counsel should have considered such an eventuality when they chose to oppose class certification in California.  Did they imagine hundreds of plaintiffs would simply disappear?  Given the lack of sense evidenced in the present petitions, perhaps they did."  p.3 fn 2.

- "the merits of 24 Hour's petitions before this Court are dubious, to say the least."  p.4.

- "Considering all of the foregoing, there is no logic to 24 Hour's decision to file its petitions in this Court.  At worst, it looks suspiciously like these petitions were brought for delay or other improper purpose, such as in retaliation for slights, real or imagined by opposing counsel; at best it looks suspiciously like counsel does not know what he is doing."  p.4.

- "To argue that the Employees are refusing to arbitrate, simply because they filed an arbitration action in a venue not of 24 Hour's choosing, absent any enforceable forum selection clause, is frivolous."  p.4-5.

- "Although the Court is thus tempted to dismiss these actions, or even to impose sanctions for what may very well be an abuse of this Court's already full docket (not to mention abuse of twenty other district courts across the country), instead the Court will content itself with transferring these cases back whence they came—the Northern District of California."  p.5.

- "The possibility of duplicative and even contradictory rulings is therefore very real indeed; in fact, it is a near certainty."  p.6.

- "Furthermore, by appointing a Special Master to review all of the individual

arbitration actions descended from *Beauperthuy*, the Northern District of California is attempting to achieve uniform resolution of them, a goal which would likely be frustrated if this and other courts across the country entertain the later-filed petitions brought by 24 Hour." p.6.

- "It also bears noting that Judge Samuel Conti presided over the original *Beauperthuy* proceedings, and now presides over the pending petitions to compel arbitration in the Northern District of California. The record shows he is well-versed in this litigation, and has taken laudable steps to move this unruly mass of cases towards some kind of orderly conclusion." p.6 fn. 7. A copy of Judge Sparks' Order is attached to the Karczag Sanctions Decl., as Exh. 7.

As shown below, put simply, 24 Hour's counsel's conduct is precisely what Section 1927 was designed to address.

## 2. Argument.

### A. Section 1927's Provisions and Application.

Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court in the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The aim of § 1927 is to ensure that attorneys "regularly re-evaluate the merits of their claims and to avoid prolonging meritless claims." *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1224 (10th Cir. 2006).

Section 1927 applies not only to the initiation of frivolous actions, but the maintenance of cases after it becomes apparent that they are meritless. "[A]lthough a case may not be frivolous when filed, the continued prosecution of an action after it has become apparent that it is meritless will warrant sanctions

under § 1927." *Shackelford v. Courtesy Ford, Inc.*, 96 F. Supp. 2d 1140, 1144-45 (D. Colo. 2000); see *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1224 (10th Cir. 2006); *Roth v. Spruell*, 388 Fed. Appx. 830, 2010 WL 2881532, at *5 (10th Cir. 2010) (upholding conclusion that counsel, upon being notified of a controlling case requiring dismissal, "should have voluntarily dismissed the complaint"); *Medtronic Navigation, Inc. v. BrainlabMedizinische Computersystems BMBH*, No. 98-cv-01072-RPM, 2008 U.S. Dist. LEXIS 13483, 2008 WL 410413, at *10 (D. Colo. Feb. 12, 2008)

In the Tenth Circuit, a showing of bad faith is <u>not</u> required before a Court imposes sanctions pursuant to § 1927. *See Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008). In other words, counsel is not permitted to blind himself to changed circumstances and later claim that he acted with a "pure heart." *Id.* at 1203 ("Where, 'pure heart' notwithstanding, an attorney's momentarily 'empty head' results in an objectively vexatious and unreasonable multiplication of proceedings at expense to his opponent, the court may hold the attorney personally responsible.").

In *Hamilton*, the sanctioned attorney argued on appeal that his conduct "was but one 'isolated incident' of misconduct." *Hamilton*, 519 F.3d at 1203. The Tenth Circuit found that § 1927 "sanctions are not reserved for the worst offenders," because they "are levied to compensate the victims of dilatory practices, not as a means of punishment." *Id.*; *Gruppo v. FedEx Freight Systems, Inc.*, No. 05-cv-02370-MSKKLM, 2008 U.S. Dist. LEXIS 63200, 2008 WL 3211287, at *5 (D. Colo. Aug. 6, 2008). Therefore, for purposes of §1927, the lie or disabused theory need only be sufficiently serious so as to have led to the multiplication of proceedings and additional cost to defendant. For example, in *Gruppo*, it was sufficient that counsel persisted in advancing a meritless overbroad claim. *Gruppo*, 2008 U.S. Dist. LEXIS 63200, 2008 WL 3211287, at *8.

In sum, "counsel's conduct must be viewed under an objective standard. [citation]….Under § 1927, sanctions must be imposed if the attorney's conduct, "'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'" *In re W. Monetary Consultants*, 143 B.R. 780, 782-783 (D. Colo. 1992) citing *Endrex Invs., Inc. v. Mauna Lani Resort, Inc.*, 111 Bankr. 939, 946 and 947 (D. Colo. 1990) and *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987)(emphasis omitted)).

The obligations of counsel under §1927 derive from counsel's obligation as a member of a federal bar and the realities of the federal court system, which in order to work properly, rely upon ethical imperatives including, trustworthiness, honor, and competence, in accord with the "highest traditions of the profession under exceedingly exacting conditions":

> Because of the demands of federal practice, the volume of documents and case files confronting each judge and the vicissitudes and complexity of federal legislation, a high degree of trust and reliance must be reposed in the members of [the federal] bar. Other courts, of course, also rely heavily on the trustworthiness and honor of the bar. In this court, however, such reliance is indispensable to the very functioning of the court. Acts of counsel which indicate incompetence or insensitivity to ethical imperatives cannot be tolerated. Attorneys who practice as members of [the federal] bar must therefore perform according to the highest traditions of the profession under exceedingly exacting conditions. Such behavior, in a manner of speaking, must be second nature to them. *In re Suspension of Mattox*, 567 F. Supp. 415, 417 (D. Colo. 1983), rev'd on other grounds, [**7] 758 F.2d 1362 (10th Cir. 1985)….Mr. Pollock has not conducted himself in a manner consistent with this standard. Therefore, sanctions are appropriate under Bankr. R. 9011 and 28 U.S.C. § 1927. *In re Nucor, Inc.*, 113 B.R. 22, 25 (D. Colo. 1990)

Section 1927 sanctions may be especially appropriate when the multiplicity of litigation derived from the attempt to escape a perceived unfriendly forum, or the manufacture a basis for seeking to initiate an action in a forum other than that

in which the dispute has resided for years, and when a dubious basis for the foreign court's jurisdiction are raised:

> We come last to the issue of sanctions. In June 1998, a month after the arbitrators' first award (the one the district court in February of the following year remanded to the arbitrators for clarification), the defendants scampered off to a New York state court and asked it to confirm the arbitrators' award. The choice of forum was curious, since it was the federal district court in Chicago that at the defendants' urging had stayed the suit filed by the plaintiffs so that the matter could be referred to arbitration. But stranger than the choice of forum was the reason given for the choice, that the district court in Chicago did not have jurisdiction to confirm the award--which is ridiculous. *Baltimore & Ohio Chicago Terminal R.R. v. Wisconsin Central Ltd.*, 154 F.3d 404, 407 (7th Cir. 1998); *In re VMS Securities Litigation*, 21 F.3d 139, 145 (7th Cir. 1994); *LaPrade v. Kidder Peabody & Co.*, 330 U.S. App. D.C. 386, 146 F.3d 899, 902-03 (D.C. Cir. 1998). It was the court in which the suit had originally been filed and arbitration ordered years before the defendants filed suit in another state to enforce the arbitration award that they had obtained.

> ….Nevertheless the district court without any discussion of the reasonableness of the theory denied the plaintiffs' motion for sanctions under 28 U.S.C. § 1927.

> **That statute authorizes sanctions against a lawyer who vexatiously (which is to say gratuitously and injuriously) multiplies proceedings, an excellent description of the defendants' action in seeking confirmation of the award in a different court from the one in which the suit giving rise to the arbitration had been pending for three years. It was the defendants, remember, who had wanted arbitration in the first place.** They could back in 1995 have moved under 9 U.S.C. § 4 for an order to arbitrate in any court (state or federal, see *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 271-73, 130 L. Ed. 2d 753, 115 S. Ct. 834 (1995)) in which they could obtain jurisdiction over the plaintiffs and they could later have sought confirmation of a favorable award in that court. Instead they waited three years until, **doubtless worried by some critical comments in our previous decisions**, 103 F.3d at 529; 136 F.3d **at 542-43, they decided to seek a friendlier forum than the one in which till then they had contentedly acquiesced in litigating.**

…

**So clear is it that the defendants filed a frivolous suit in a New York court in order to complicate this already far too complicated and absurdly protracted litigation, to the cost of the plaintiffs, that the district judge committed an abuse of discretion in refusing to sanction the defendants' counsel under section 1927. The defendants' choice of forum, the ground, and the timing prove their bad faith. "When an attorney recklessly creates needless costs the other side is entitled to relief." *In re TCI Ltd.*, 769 F.2d 441, 446 (7th Cir. 1985). That's this case.**

The judgment confirming the arbitration award is affirmed, but the denial of the motion for sanctions is reversed and the plaintiffs are directed within 14 days to submit a statement of the legal fees and other expenses that they incurred in defending against the New York suit. *IDS Life Ins. Co. v. Royal Alliance Assocs.*, 266 F.3d 645, 653 (7th Cir. Ill. 2001) (emphasis added).

### B.     This Case is a Textbook Example for the Application of an Award of Fees as Sanctions Under Section 1927.

As the above-cited authorities make plain, this dispute is exactly what §1927 was designed to address.  Here, Plaintiff has a documented history of bad faith positions with regard to its employees' attempts to recover their unpaid wages that pre-dates the filing of the nonCAND Petitions.  Moreover, since the filing of the nonCAND Petitions, every single district court but one has found them to be meritless.[5]

Defendants have filed substantive responses that go into great detail on all of the reasons why this is so and those arguments will not be repeated here.  But,

---

[5] As has been briefed in other filings, the lone exception is Judge Hughes from TXDS, who found that 24 Hour could compel arbitration, despite the first to file rule, and despite the fact that the 5th Circuit had ruled just months before that 24 Hour's arbitration policy was illusory because it retained the power to unilaterally retroactively amend it, and thus 24 Hour could not enforce the policy.  The Claimant appealed Judge Hughes's order, and while the appeal was pending, 24 Hour stipulated to dismissal of that case in exchange for dismissal of the appeal by the Claimant.  Thus, that case has now been dismissed by 24 Hour, effectively eliminating it from consideration.

what is critical is that the findings of Judge Conti confirm that 24 Hour had no basis to file its nonCAND Petitions, and that their true motive was to further "dilate" and "delay" the proceedings unnecessarily. Especially germane is the fact that under controlling 9th Circuit case law and the plain text of the FAA, once Claimants filed their Petitions in CAND, if the Court found a valid agreement to arbitrate, it was powerless to do *anything else* other than order the parties to arbitrate in its District. And, this would be true even if there was an express venue clause in the arbitration agreement. Of course, Judge Conti, consistent with the other federal Judges to address this issue, found that there was no such clause. Thus, 24 Hour knew that the *only* outcome from the CAND Petitions would be an order compelling arbitration in that District.[6] And, yet, 24 Hour, through its counsel, proceeded to file 307 competing cases throughout the country in twenty-one separate federal District Courts. The only inevitable result would be either dismissal of those actions, or having conflicting and competing rulings compelling arbitrations in two different districts.

The baselessness for this conduct was confirmed  when 24 Hour stated that it intended to challenge the CAND Petitions by making a motion in Judge Conti's Court to transfer the 273 cases to twenty one separate District Courts across the country. If 24 Hour had prevailed on its motion to transfer the 273 cases from the Northern District of California, then the 273 cases would have been transferred to the nonCAND courts without the necessity of filing 307 competing petitions.  , In other words, even 24 Hour's chosen strategy to challenge the CAND Petitions by filing its motion to transfer all 273 cases did not require the filing of the nonCAND cases.

But, by January 9, 2012, when 24 Hour agreed to the appointment of a Special Master, and then the end of February 2012, when the Special Master was appointed, and whose appointment was made specifically to determine a number of

---

[6] See July 5, 2012 Order, pages 12-15.

issues, and especially, the single issue that 24 Hour claimed was put into play by its filing the nonCAND cases--namely where the arbitrations should proceed—its continued maintenance of the nonCAND cases served no purpose other than to cause Defendants to incur unnecessary costs and expenses.

Finally, 24 Hour's counsel has made numerous misstatements and omissions that establish that its conduct did not meet the level required to meet its duties to this Court.

For example, its counsel knows that a jurisdictional pre-requisite to a petition to compel arbitration is a refusal of the other side to arbitrate. But 24 Hour falsely asserts in its petitions filed in the District of Colorado that Defendants had refused to arbitrate. That is not true. In fact, Defendants filed Demands for arbitration in the Northern District of California in March 2011, nearly a year prior to 24 Hour's filing 307 nonCAND Petitions, and Defendants filed Petitions to Compel Arbitration in CAND on December 5, 2011, days, weeks and even more than a month prior to the petitions filed in the 21 nonCAND courts, including District of Colorado.

As another example, although its Petitions attached the Arbitration Demands of Claimants, it falsely stated that Claimants did not respond to its request to name arbitrators, when in fact Claimants did provide their own list of arbitrators to 24 Hour. Karczag Decl. ¶ 3.

As another example, although 24 Hour's counsel attached several of Judge Conti's rulings (those that it wanted to challenge in a different District Courts), it failed to inform the other District s Courts about Defendants' earlier-filed Petitions to Compel Arbitration in the Northern District of California, and then later, about the submission, with 24 Hour's agreement, of the issue of where the arbitrations should take place to a Special Master, and instead continued to prosecute the cases.

As another example, 24 Hour's counsel actively sought conflicting rulings by the nonCAND courts and then used those rulings to advance their cause in other cases. (This was briefed in Defendants' Reply re OSC re Rule 11 Sanctions filed in other 9 DCO cases,[7] in Section 3 of those Replies, entitled "24 Hour's contention that it did not seek to capitalize on its proffered method of service is not accurate; See also Karczag Sanctions Decl, ¶ 10 )

As another example, every time that Defendants' filed a substantive opposition to 24 Hour's petitions in the twenty one District Courts, 24 Hour filed a reply, which sought to have the Court *stay* the nonCAND cases. Karczag Sanctions Decl. ¶ 11. Why would Respondents' counsel file 307 cases in twenty-one separate District Courts and then, *only after a substantive response is filed by Defendants*, seek a stay?[8]  The real reason is to try to drive up the costs of the litigation for the Defendants.

---

[7] Those other 9 cases are:

|  | CASE NAME | CASE NO. |
|---|---|---|
| 1. | 24 Hour v. Bratten | 1:11-cv-03198-JLK |
| 2. | 24 Hour v. Rose | 1:11-cv-03210-JLK |
| 3. | 24 Hour v. Vecchiarelli | 1:11-cv-03228-JLK |
| 4. | 24 Hour v. Moore | 1:11-cv-03283-JLK |
| 5. | 24 Hour v. Bean | 1:11-cv-03290-JLK |
| 6. | 24 Hour v. Simmons | 1:11-cv-03372-JLK |
| 7. | 24 Hour v. Papedo | 1:12-cv-00113-JLK |
| 8. | 24 Hour v. Williams | 1:12-cv-00116-JLK |
| 9. | 24 Hour v. Marsh | 1:12-cv-00123-JLK |

[8] 24 Hour will contend that it was trying to "root out" claimants who did not really want to arbitrate.  However, the results for 24 Hour were that out of 307 cases, 2-3 Claimants wrote

Critically, the language from the various court opinions (set forth in the substantive oppositions to the petitions, and in the Reply re OSC re sanctions in the other nine DCO cases), shows that the District Courts recognize the waste and burden that 24 Hour has imposed by its filing of these cases, and that there is no merit whatsoever.

This was plainly and patently 24 Hour's litigation strategy, as managed by its counsel Littler Mendelson in San Francisco, and implemented by local Littler counsel in multiple other Districts, including Joshua B. Kirkpatrick in this District. Its strategy was to bury the Defendants and their counsel in a multi-front war, in the hopes of obtaining conflicting rulings by one or more District Courts. Only because Defendants' counsel filed substantive oppositions which were read and considered by Federal District Judges in twenty-one separate Districts was 24 Hour's strategy thwarted. A great deal of attorney time was expended in filing oppositions to hundreds of petitions, including the petitions filed by 24 Hour in this District.  The facts, as Judge Conti, and many other District Court Judges have implicitly and explicitly recognized, are that under the FLSA, 24 Hour has no claims against Defendants.  It is a one-way statute allowing employees to recover for unpaid wages.  24 Hour has no incentive in an orderly resolution of claims that only subject it to liability with no upside to it, and its counsel did everything they could to prevent that.

Finally, this Court has already found that 24 Hour's counsel asserts and sustains meritless legal positions without any reasonable justification and has ordered sanctions to be imposed on the cases in which 24 Hour did not effectuate service of process (and for which the Defendants thus did not have to file a

---

letters into the Court saying that they were amenable to arbitrating their claims in their home state, one retained new counsel to proceed with the individual arbitration, and one sent a letter in effectively saying that he was so tired of all of the delays that he wanted nothing more to do with the litigation.  That amounts to one person out of 307, or a .029% percent rate of withdrawal. That does not justify the filing of hundreds of cases.

substantive response).  The service aspect of 24 Hour's strategy is part and parcel of its overall strategy when it comes to this dispute in general and the nonCAND Petitions in particular.

### C.    Request for Judicial Notice.

Although the Court does not have an official page limit, Defendants are very aware of the volume of filings and papers this case has generated.  Defendants themselves had to file 28 substantive oppositions/responses to 24 Hour's Petitions.  Those papers are voluminous.  They explain and prove in detail, (1) why Defendants prevail and these cases should be dismissed under the first to file rule, (2) why the CAND Petitions and cases should proceed to arbitration there (3) why 24 Hour's position on the location of the arbitration and on the purported venue provision are not well taken (4) why 24 Hour cannot enforce is arbitration agreement (illusoriness and unconscionability) (5) why equity demands that these cases should be dismissed and (6) why 24 Hour waived its right to compel arbitration.  All of that briefing is presently before this Court.  To avoid redundancy and repetitive briefing, Defendants respectfully request that the Court take judicial notice of those Oppositions.

### D.    Statement re Meet and Confer.

This brief is being filed pursuant to the Court's order allowing Defendants to file a fees motion.  This fees motion is based upon the imposition of sanctions against opposing counsel pursuant to 28 U.S.C. 1927.  Defendants submit that it would be futile to engage in a meet and confer with opposing counsel, to request that they agree to the imposition of sanctions against themselves.  If the Court grants this motion, Defendants' counsel will meet and confer with 24 Hour's counsel as to what reasonable fees and costs would be and will seek a ruling from this Court as to any unresolved fees or costs

### 3.      Conclusion

As the District Court judge who has presided over this litigation found years ago: "Plaintiffs have repeatedly requested that Defendants arbitrate their dispute[;] Defendants accepted once, only to soon thereafter stymie the process…." and that:

> Plaintiffs have been forced to deal with defendants' confusing, contradictory, and time-consuming strategic maneuvering purportedly based on the [2001] Arbitration Agreement but which involve simultaneous explicit refusals to compel arbitration.  The unnecessary delay and expense this has caused has affected not only Plaintiffs but also the various courts and arbitration institutions which have been involved. Doc 66, 9:27-10:4, 10:18-25.

Judge Conti concluded that: "in the interests of justice and efficient resolution of the parties' disputes [the Court] hereby finds that Defendants have waived their right to compel arbitration and are thus barred from making any arguments on the basis of such a right."  Doc 66, 8:23-9:4, 9:11-18.

24 Hour's 307 nonCAND retaliatory later-filed petitions to compel arbitration are the latest manifestation of that documented conduct.

For the reasons set forth in this motion, Defendants and their counsel respectfully request this Court enter an order entitling Defendants and their counsel to recover their reasonable attorneys' fees and costs jointly and severally against Plaintiffs' counsel, Joshua B. Kirkpatrick and the law firm of Littler Mendelson. Defendants further request that the amount of fees and costs be determined upon subsequent motion to this Court, after an opportunity to meet and confer with the opposing counsel.

DATED this 27th day of August 2012.

Respectfully submitted,

DONAHOO & ASSOCIATES

By:/s/ Richard E. Donahoo
Richard E. Donahoo
440 West First Street, Suite 101,
Tustin, CA 92780
Tel: (714) 953-1010
Fax: (714) 953-7777
Email:  rdonahoo@donahoo.com

FOLEY BEZEK BEHLE & CURTIS, LLP

By: /s/  Justin P. Karczag
Justin P. Karczag
Thomas G. Foley, Jr.
575 Anton Blvd., Suite 710
Costa Mesa, California 92626
Telephone: (714)556-1700
Facsimile: (714) 546-5005
E-mail: Jkarczag@foleybezek.com

## CERTIFICATE OF SERVICE

     I CERTIFY that on August 27, 2012 the foregoing documents were served on the Parties Counsel of record via the ECF system or via electronic mail.

/S/ Justin P. Karczag

Justin P. Karczag